KLUNDT and others, Respondents, vs. KELLER and others, Appellants.

*May 16—June 4, 1912.*

*Pleading: Overruling demurrer ore tenus: Harmless error: Bonds: Breach of conditions: Sale of stallion: Fraud.*

1. If the overruling of a demurrer *ore tenus* in this case was error, it is not ground for reversal, the complaint having been formally amended to meet the supposed defect at the close of the plaintiff's case, and defendants not having been misled or prejudiced.
2. Before paying a commission to their agent for selling a stallion, plaintiffs required from him a bond for repayment thereof, conditioned that the sale was valid and binding, that the note received for the price should be paid when due, and if not that the agent should pay back the amount paid to him. *Held,* that upon breach of the conditions plaintiffs might recover on the bond, even though at the time of giving it the agent had told them of facts going to show the sale and note invalid, and even though they had sold the note to another person.
3. Where the sale of a stallion to a number of farmers is not to be effective unless fifteen shares be taken by purchasers, such shares must be taken in good faith, and the purchase of shares by mere stool pigeons to whom the seller himself furnishes the money therefor vitiates the whole transaction.

APPEAL from a judgment of the circuit court for Shawano county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

This is an action at law upon a money bond. The plaint-

iffs are partners at Tigerton in this state, doing business un-
der the name of the Tigerton Stud Horse Company. The
partnership owned a stallion named Carnival in February,
1904, and employed the defendant *Keller* to sell the same.
*Keller* sold the horse to some farmers at Symco, Wisconsin,
during the last named month, and received a promissory note
for $3,000 signed by eleven farmers, upon which $400 was
indorsed as having been paid. *Keller* delivered the note to
the plaintiffs and claimed $940 for his services and expenses
in making the sale. The plaintiffs sold the note for $2,529.92
to one Swanke, and guaranteed the payment thereof. Soon
after this sale the plaintiffs settled with *Keller* for his serv-
ices in the sale, and paid him $940 upon his giving them the
bond upon which this action is brought, signed by himself as
principal and the other defendants as sureties. The penal
sum named in the bond is $940, and the conditions as fol-
lows:

"Whereas the said Tigerton Stud Horse Company has, on
delivery of this bond, agreed to pay the above bounden, *Otto
Keller,* the sum of nine hundred forty ($940) dollars, as a
settlement for expenses and services rendered for selling a
certain stallion owned by said company:

"Now, therefore, the conditions of this obligation are such
that if the sale of the said stallion shall be valid and binding,
and the note for $3,000 received by the company for the pur-
chase price of said stallion shall be a good *bona fide* note and
shall be paid by the makers thereof when due; and in case
said note shall not be good and binding, the said bounden,
*Otto Keller,* will then in that case pay back to said Tigerton
Stud Horse Company the said sum of nine hundred forty dol-
lars ($940), on demand, received for his expenses and serv-
ices for selling said stud horse, then this obligation to be void
and of no effect, otherwise of full force and effect."

Swanke brought action on the note against the makers, who
defended on the ground of false and fraudulent representa-
tions made by *Keller.* The action having been tried and a
verdict for Swanke directed, the makers appealed to this

court, and the judgment was reversed on the ground that the questions at issue should have been submitted to the jury. 138 Wis. 654, 120 N. W. 414. The plaintiff having failed to have the action remitted within a year, it was dismissed in November, 1910, on motion of the defendants therein. The trial court directed a verdict for the plaintiffs for $940, from which amount the plaintiffs afterward remitted the sum of $100, because by the original contract with *Keller* the plaintiffs had agreed to pay his expenses in making sale of the horse not exceeding $100. Judgment being entered for the amount of the verdict as so reduced, with interest, the defendants appeal.

For the appellants there was a brief by *Olen & Olen,* and oral argument by *W. A. Olen.*

For the respondents the cause was submitted on the brief of *Kreutzer, Bird, Rosenberry & Okoneski.*

Winslow, C. J. A demurrer *ore tenus* to the complaint was interposed at the opening of the case, but inasmuch as the complaint was formally amended to meet the supposed defect at the close of the plaintiffs' case and it is plain that the defendants were not misled or prejudiced, there was no prejudice in the original ruling even if it were to be held erroneous when made. The questions in the case were very simple. The bond was conditioned that the sale should be binding, the note good and paid when due, *or* the $940 paid back.

The note was not paid, though long since due, and it was affirmatively shown without substantial dispute that the sale was not valid or binding. It was understood between *Keller* and the farmers that in order to render the sale effective there must be sold fifteen shares in the horse of $200 each, whereas in fact no more than thirteen shares were ever sold to *bona fide* purchasers. These facts appear from the testimony of the farmers and of *Keller* himself. *Keller* admits that he gave two of the supposed shareholders $200 apiece on the under-

standing that when the time came each should pay back the $200 as if he was buying a share in the horse, that this was done, and the supposed payments indorsed on the note. Of course any such secret operation vitiated the entire transaction. If the sale was not to be effective until fifteen shares had been sold, it cannot be made effective by the purchase of two shares by mere stool pigeons who have been furnished the money to make the purchase by the seller himself. Fifteen shares must be in good faith sold, and this it appears was never done. Testimony was introduced tending to show that *Keller* told some of the plaintiffs at the time he received the $940 and gave the bond that he paid some of the signers' money in order to get them to sign the note, but this cuts no figure on the questions here presented. The plaintiffs took the bond to protect themselves against just such contingencies; in fact it is not difficult to suppose that they realized from this fact itself that collection of the note would be difficult or impossible, and hence insisted on the bond as they had a right to do.

There is no doubt, therefore, that every condition of the bond has been breached: the sale was not binding, the note uncollectible and never paid, and *Keller* has never paid back the $940.

The fact that the plaintiffs had sold the note to another is not material: the action is not on the note, nor does recovery depend on its ownership. Before paying $940 of their own money to *Keller* they required the bond and received it. They are plainly entitled to recover back the money so paid out on the faith of the bond when they show that its conditions have been breached. There are no other questions of sufficient importance to require treatment.

*By the Court.*—Judgment affirmed.